M. J. JENKINS v. THE STATE.

No. 14625.   Delivered December 16, 1931.

The opinion states the case.

*J. F. Cunningham,* of Abilene, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CALHOUN, JUDGE.—Receiving and concealing stolen property is the offense, the punishment, confinement in the penitentiary for two years.

There are no bills of exception in the record, but appellant strenuously raises the issue as to the sufficiency of the evidence to support the conviction.

The state's case depended entirely upon circumstantial evidence, not only as to the person who committed the theft, but also as to appellant receiving said property knowing the same to have been stolen. The testimony of T. S. Bush, the owner of the cattle alleged to have been stolen, was to the effect that on July 15, 1930, the animal in question came up with his other cattle and was left outside of the lot because it sucked its mother; that when he went to bed about 9 or 9:30 o'clock that it was lying outside of said lot, but was gone the next morning; that upon investigating the next morning, the ground showed that some time during the night some one evidently roped the animal and had driven it about a mile and had loaded it into a trailer; the tracks showed that the man who drove off the animal wore a number 7½ shoe. The tracks of another man appeared on the ground at the place of the loading of the animal into the trailer and this track was a number 8 boot track. It is

not shown by the evidence in this case that Calvin Bush, the person alleged to have stolen the cattle wore a number 7½ shoe nor is there any evidence that the appellant wore either a 7½ or an 8 shoe or boot.

The state offered as a witness, A. J. Bevil, who at the time of the theft of the animal lived in Abilene, Texas, a distance of 50 miles from where the animal was stolen. This witness testified that on the morning of July 15, 1930, the defendant, Jenkins, engaged of him a trailer; that later about dark two men whom he did not know, but afterwards heard that one of them was Calvin Bush, came and got the trailer; that they did not say what they wanted with it. That he did not know what direction they went or what kind of a car they were driving when they carried the trailer off nor when it was brought back, but testified that it was brought back the next morning by these same two persons who carried it off.

The state introduced W. H. Johnson, marshal of the city of Hamlin, and he testified that on the evening of July 15, the night the cattle was shown to have been stolen, he had been at a skating rink and after dark about 9 o'clock on returning home, he came upon Calvin Bush on the outskirts of Hamlin with his car turned over by the roadside and that he carried Calvin Bush to Hamlin and assisted him in getting a wrecker and then brought him back to his car and left him there about 9:30 P. M. He stated that the next morning, July 16, 1930, he was notified of the theft of T. S. Bush's cattle; that he with said Bush and one Jones tracked the calf to the place where it was loaded into the trailer and then trailed the trailer for about 10 miles; that the tracks were in a southwesterly direction which was not toward Abilene but toward Sweetwater. He also testified that Abilene, Texas, was some 50 miles southeast from Hamlin. There was no evidence offered to show that the trailer at any time went toward Abilene from the place where the cattle was stolen.

This is substantially all the testimony offered by the state in their attempt to show that Calvin Bush was the person who stole the calf.

For the purpose of connecting the defendant, M. J. Jenkins, with the possession of the calf alleged to have been stolen by Calvin Bush, the state introduced one John Saunders, who testified that he lived in Taylor county near the road from Hamlin to Abilene and about four miles from Abilene; that on the night of July 15, 1930, somewhere between 9:30 and 10:00 o'clock, a man came to his house and hollered and said he was broken down and wanted to put a calf in his lot; that he agreed to the same but never went outside of the house and did not know who the man was; that he saw the light of an automobile out near the road but could not see the automobile and did not know whether it had a trailer or not. He testified that he and his father left early the next morning on a fishing trip and that he did not see any animal in his lot that might have

been left there the night before; that they were gone several days and he never did see the yearling.

The state to further connect the defendant with the stolen animal called a witness by the name of Ray, who testified that on the 17th day of July, 1930, he bought from the defendant a Jersey heifer; that the defendant went with him in his, Ray's, trailer and that the calf was delivered to him by defendant on July 17, 1930, at a place corresponding with that of John Saunders, the state's witness. The check paid for the said animal was dated July 17, 1930. He testified further that the yearling that he bought from defendant was not more than 9 months old, possibly ten in his opinion; it was a gray heifer yearling, might be called cream-colored, but more gray than cream-colored. This is in substance all the inculpatory facts introduced by the state.

There was no evidence showing that the animal sold by the appellant in this case to the witness Ray was the same animal alleged to have been stolen. There is absolutely no evidence that said stolen animal was ever found in the possession of Calvin Bush, the alleged thief.

The defendant offered several witnesses to show that said Calvin Bush was in the town of Hamlin part of the night and stayed at the home of his father and mother. The defendant also offered evidence to the effect that he had purchased a heifer yearling from one George Harper some time about the middle of July.

We think the evidence introduced by the state, disregarding the evidence introduced by the defendant, to be insufficient to support the judgment of conviction. Branch's Penal Code, sec. 1877, as to the sufficiency of circumstantial evidence, states that "to sustain a conviction it should appear not only that an offense as charged has been committed, but there should also be proof to a degree of certainty greater than a mere probability or strong suspicion tending to establish that the party charged was the person who committed it, or was a participant in its commission. There must be legal and competent evidence pertinently identifying the defendant with the transaction constituting the offense charged against him." Citing a number of cases in support thereof.

Under the count in which the appellant was convicted, the defendant was charged with unlawfully and fraudulently receiving from Calvin Bush certain corporeal personal property then and there belonging to T. S. Bush, and which said property had theretofore been acquired by the said Calvin Bush in such a manner as that the acquisition comes within the meaning of the term theft, describing the property as one head of cattle. Under this count in the indictment, it is necessary for the state to not only show that the said Calvin Bush was the person who committed the theft of the cattle, but also that the appellant received said cattle from said Calvin Bush knowing the same to be acquired by theft. There may be some suspicious circumstances in the record, but we do

not feel that we can be expected to substitute suppositions for evidence. We can not declare that what in reality amounts only to suspicion is in truth sufficient evidence of guilt, for it is one of the indispensable elements of circumstantial evidence that it must do more than "coincide with, account for, and therefore render probable the guilt of the defendant. It must exclude every other reasonable hypothesis except the defendant's guilt." That the evidence does not exclude every other reasonable hypothesis except the defendant's guilt of the particular offense is, we think, made plain by the evidence in this case.

Because we believe the evidence is insufficient to support a conviction, the judgment of the trial court is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.